**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

H.E.,

Petitioner,

v.

Pamela Bondi, et al.,

Respondents.

No. CV-26-01770-PHX-DJH (JFM)

**ORDER**

**A. Background**

Petitioner is a native of Iran who fled that country due to his sexual orientation. Petitioner entered the United States in January 2025 and was immediately taken into custody. On April 30, 2025, an immigration judge ("IJ") ordered him removed from the United States to Iran; this order was amended on May 1, 2025 to include Turkey as an alternate country for removal. Petitioner was not given notice of this amended ruling and did not receive records of the proceedings until February 2026—by which time the IJ's removal order(s) had already become final. In November 2025, through new counsel, Petitioner filed a Motion with the Board of Immigration Appeals ("BIA") seeking to accept his untimely appeal of the IJ's removal order. When the BIA denied that motion on December 19, 2025, Petitioner appealed that denial to the Tenth Circuit Court of Appeals.

During the pendency of that appeal, Petitioner initiated this action on March 16, 2026, by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1). Therein, Petitioner alleged that he was detained under

8 U.S.C. § 1225(b), and that his ongoing detention had become unconstitutionally prolonged in violation of his due process rights. (*Id.*). Petitioner further signed a Declaration that immigration authorities had twice attempted to remove him, first in November 2025 and then in December 2025. (Doc. 1-1 at 9). As to the November 2025 attempt, Petitioner stated that:

> In November 2025, they tried to put me on a flight to Iran. I refused to cooperate with the ICE officers. I cried and begged. I told them I cannot go back because they arrested me for being gay and they will execute me. I told them I am not safe and cannot go back. I told them it is not safe for me because of all the people that knew about Hassan and me, and they want us dead.

(*Id.*). As to the December 2025 attempt, Petitioner stated that:

> In December 2025, they tried to deport me again, but my attorney advocated for me and told them I had a motion to the Board of Immigration Appeals pending and they did not put me on a flight.

(*Id.*). The December 2025 attempt, and the subsequent arguments made about it, are the subject of this Order.

By Order dated March 17, 2026, the Court directed Respondents to show cause for why the Petition should not be granted. (Doc. 5). The Order specifically directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury." (*Id.* at 2). Respondents' response was due by March 24, 2026. (*Id.*).

On that date, Respondents—represented by Assistant United States Attorney Brooks Chupp ("AUSA Chupp")—filed a response opposing the Petition. (Doc. 9). The Response included no evidence or affidavits, but simply argued that "Petitioner is not detained under Section 1225(b); he is detained under Section 1231(a)(6)," and that because Petitioner had not explicitly raised a claim under § 1231(a)(6) the Petition should be dismissed as moot. (*Id.* at 3). The Response further argued that, even if Petitioner had raised such a claim, a "barrier" to it was "his admitted noncompliance with ICE's efforts to remove him." (*Id.* at 6). As for the December 2025 attempt, AUSA Chupp argued that

it was "unclear whether Petitioner's attorney's representations to ICE about his pending motion before the BIA constitute[d] noncompliance with ICE's lawful removal efforts." (*Id.* at 7).

In his Reply (Doc. 10), Petitioner continued to argue that he was detained under 8 U.S.C. § 1225(b), but that regardless of which statute governed his detention, his claims for relief "ar[o]se from the Fifth Amendment, not any statute." (Doc. 10 at 2).

By Order dated March 30, 2026, the Court concluded that Petitioner's detention was governed by 8 U.S.C. § 1231 rather than § 1225. (Doc. 12 at 2). The Court declined Respondents' invitation to dismiss the action as moot because although "Petitioner misidentified the authority for his detention [that] only alters the analysis of his underlying due process claim, not the claim itself." (*Id.* at 3). Accordingly, the Court directed the parties to file supplemental briefing on whether, when viewed through the lens of *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner's continued detention was appropriate. (*Id.*). Respondents' supplemental brief was to be due by April 1, 2026, with Petitioner's supplemental brief due the next day. (*Id.* at 4-5).

In their Supplemental Response, Respondents argued that Petitioner was not entitled to relief. (Doc. 13). Notably, despite writing in their initial Response that Petitioner "is detained under § 1231(a)(6)" (Doc. 9 at 3), Respondents now shifted tack and argued that "Petitioner is not detained under Section 1231(a)(6) at all—he is detained instead under Section 1231(a)(2)(A)," and any claim under *Zadvydas* was thus "premature." (Doc. 13 at 3, 7). To reach that conclusion, AUSA Chupp and Respondents made explicit that which they had only "theorized" in their initial Response: "Petitioner's noncompliance with ICE's lawful removal efforts reset his *Zadvydas* clock." (*Id.* at 6). Referring to the December 2025 removal attempt, AUSA Chupp argued,

> Although it is unknowable exactly what Petitioner's attorney said, it seems likely—because ICE removed him from his scheduled flight—that he represented to ICE that Petitioner was not presently removable due to his pending motion before the Board of Immigration Appeals, and such a statement would have been untrue. Such a statement would also constitute the sort of intentionally obstructionist, bad faith tactic that is designed to frustrate the government's attempts to effectuate a removal order that triggers Section 1231(a)(1)(C).

(*Id.* at 6-7) (internal quotations and citations omitted, cleaned up).

As evidence for this argument, AUSA Chupp cited to the Petition (Doc. 1), Petitioner's Declaration (Doc. 1-1), and an attached Declaration from ICE Deportation Officer ("DO") Carlos Haro (Doc. 13-1). (*See* Doc. 13 at 7, lines 17-24). Specifically, AUSA Chupp cited the "Petition at ¶ 27," which states in full:

> On November 24, 2025, through new pro bono counsel, [Petitioner] filed a motion to accept an untimely appeal due to ineffectiveness of counsel and the IJ's legal errors. On December 19, 2025, the Board denied [Petitioner's] motion to accept a late-filed appeal. [Petitioner] timely filed a petition for review of that decision, which remains pending in the Tenth Circuit.

(Doc. 1 at 8 ¶ 27).

AUSA Chupp also cited Petitioner's Declaration, "Doc. 1-1 at 8." Although he did not identify the specific paragraph he was citing, from the quoted language it appears that he was referring to paragraph 59, which, as noted, states in full:

> In December 2025, they tried to deport me again, but my attorney advocated for me and told them I had a motion to the Board of Immigration Appeals pending and they did not put me on a flight.

(Doc. 1-1 at 9 ¶ 59).

Finally, AUSA Chupp referred to a newly produced Declaration from DO Haro. (Doc. 13-1). The signature block for this Declaration indicates that it was signed by DO Haro on March 23, 2026. (*Id.* at 4). It is unclear why this Declaration was not included with Respondents' initial Response on March 24, 2026, given the Court's March 17, 2026 Order to Show Cause directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury." (Doc. 5 at 2).[1] In any event, AUSA Chupp cited "¶ 21" of this Declaration as support for his argument. That paragraph states, in its entirety:

[1] The Court would also later conclude that DO Haro did not appear to have personal knowledge as to the events described in his Declaration, and thus was "not qualified to attest that the events described therein actually occurred or are accurately reflected." (Doc. 17 at 8 n. 4).

> On December 2, 2025, BIA stated that they would proceed with adjudication of stay. On the same day BIA stated that they denied the stay.

(*Id.* at 3 ¶ 21). AUSA Chupp also cited to "¶ 22" of this Declaration, which states in its entirety:

> On December 6, 2025, [Petitioner] was still pending adjudication. On that same day [Petitioner] was removed from the removal flight that was set for December 11, 2025, [Petitioner] was then returned to El Paso AOR.

(*Id.* at 3 ¶ 22).

Finally, AUSA Chupp also cited "Ex. A at ." (Doc. 13 at 6, line 20). "Ex. A" is DO Haro's Declaration. Although AUSA Chupp did not provide a pincite, it appears that this was intended to refer to paragraphs 20 and 22. Paragraph 20 states, in its entirety,

> November 4, 2025, [Petitioner] was placed for a removal flight for December 5, 2025. On the same day passport documents were sent to HQRIO.

(*Id.* at 3 ¶¶ 20, 22). AUSA Chupp provided a footnote explaining that the reference in ¶ 20 to a flight on December 5 and the reference in ¶ 22 to a flight on December 11 were the same flight "that was delayed six days, but the date difference is not material to the analysis." (Doc. 13 at 6 n. 3). AUSA Chupp did not refer to any other evidence to support his argument that Petitioner's counsel obstructed ICE's attempt to remove Petitioner in December 2025.

The next day, Petitioner filed his Supplemental Reply, arguing that he was entitled to relief pursuant to *Zadvydas* and disputing in relevant part that his counsel had obstructed ICE's attempt to remove him in December 2025. (Doc. 14). Petitioner provided a signed Declaration from his Counsel attesting that "[o]n December 2, 2025, [she] informed the El Paso field office that there was an appeal pending before the BIA. [She] did not in any way state or indicate that [Petitioner] was therefore not removable." (Doc. 14-1 at 2 ¶ 5). In support, counsel provided a December 2, 2025 email from her to "El Paso, Outreach" entitled "URGENT: APPEAL PENDING," which stated in its entirety:

/ / /

> Hello,
>
> I want to make sure you all see that there is now an appeal pending before the BIA for [Petitioner]. He has been informed that he is on the list for the next deport flight to Iran this week.

(*Id.* at 8). Counsel further attested that "[u]pon information and belief, ICE has the internal capacity and responsibility to query whether a respondent has a stay of removal. Just having an appeal pending before the BIA does not in and of itself mean that there is a stay of removal." (*Id.* at 2 ¶ 6).

By Order dated April 3, 2026, the Court noted that Respondents had requested in their Supplemental Response "an opportunity to reply to any new information that Petitioner raises in his [supplemental] reply," and granted Respondents until April 6, 2026 to file a further response to the Court's March 30, 2026 Order. (Doc. 15).

On April 4, 2026, Respondents filed their Supplemental Sur-Response. (Doc. 16). As relevant here, Respondents noted that "[i]n his [Supplemental Reply], Petitioner argued his attorney did not represent to ICE that Petitioner was unremovable by means of his pending appeal," and had "provided a declaration from the attorney who represented him at the time to support that assertion." (*Id.* at 1). Continuing, AUSA Chupp stated that "[b]ecause Respondents do not have specific records of what Petitioner's attorney did or did not state, Respondents will concede that no obstruction took place in December that would re-trigger 8 U.S.C. § 1231(a)(1)(C)." (*Id.*). Respondents maintained, however, that Petitioner had obstructed his removal in November 2025, that any *Zadvydas* claim thus remained premature, and that even if such a claim was ripe Petitioner was not entitled to relief. (*Id.* at 2-3).

By Order dated April 6, 2026, the Court found that November 2025 was already outside the 8 U.S.C. § 1231(a) mandatory detention window; that even if post-§ 1231(a) actions could operate to "reset" the mandatory detention window, Petitioner's actions in November 2025 did not rise to the level of "conspir[ing]or act[ing] to prevent the alien's removal" contemplated by § 1231(a)(1)(C); and that Petitioner was entitled to relief pursuant to *Zadvydas*. (Doc. 17at 4-6, 9-12). Although Respondents, through AUSA

Chupp, had "concede[d] that no obstruction took place in December," the Court was nevertheless "compelled to comment on counsel's accusation." (*Id.* at 6). The Court noted that

> [d]espite recognizing at the time that 'it is unknowable exactly what Petitioner's attorney said'—and now conceding that 'Respondents do not have specific records of what Petitioner's attorney did or did not state'—counsel for the government nevertheless represented that, as a matter of fact, it was 'likely' that Petitioner's counsel made an intentional misrepresentation—a lie—to federal authorities, possibly to the point of criminality. *See* 18 U.S.C. § 1001. While the timeline of litigation in this action has been compressed, that does not absolve counsel of their duty to make 'an inquiry reasonable under the circumstances' and that, by presenting a filing to the Court, they are certifying, to the best of their knowledge, information, and belief, that 'the factual contentions have evidentiary support' or 'will have evidentiary support' upon further investigation and discovery. It does not appear that counsel for the government made the reasonable inquiry required by Rule 11, or, most importantly, that his accusation had any evidentiary support. It is difficult to imagine how the accusation could have evidentiary support when counsel himself acknowledged it was 'unknowable' what, if anything, Petitioner's counsel said.
>
> Indeed, what evidence has been provided either does not support, or cuts directly against, counsel's accusation.

(Doc. 17 at 6-7, 9) (internal citations omitted). The Court continued, noting that

> Like Rule 11, the Arizona Rules of Professional Conduct also require that the claims and contentions made during litigation have a good faith, non-frivolous basis in law and fact. Ariz. Rules of Prof'l Conduct 3.1, 3.4. The Rules further require that where counsel has actual knowledge of an ethical violation, an ethical duty to report is triggered. Ariz. Rules of Prof'l Conduct 8.3, 8.4. The Court will separately consider whether sanctions pursuant to Rule 11(c) or disciplinary referral are warranted here.

(*Id.* at 9).

By Order dated July 13, 2026, the Court took that opportunity, and ordered AUSA Chupp to "show cause why the representations discussed above are not subject to sanctions as violative of Rule 11(b)(3) and/or worthy of disciplinary referral." (Doc. 25). Counsel has now responded. (Doc. 26). Upon review of the response and all of the filings in this

action, the Court finds that sanctions pursuant to Rule 11(c)(3) of the Federal Rules of Civil Procedure are warranted here.[2]

**B. Fed. R. Civ. P. 11(c)(3)**

Rule 11(c)(3) provides: "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

As relevant here, Rule 11(b) provides:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Civ. P. 11(b)(3).

For sanctions under Rule 11 to be imposed, the Court "must conduct a two-prong inquiry." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). First, the filing at issue must have been "legally or factually baseless from an objective perspective." *Id.* Second, the Court must determine if the attorney or party "conducted a reasonable and competent inquiry before signing and filing it." *Holgate*, 425 F.3d at 676; *Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997).

When, as here, sanctions are contemplated on the Court's own initiative—as distinct

[2] AUSA Chupp, and the United States' Attorneys Office more broadly, also requests "a hearing to further discuss this matter with the Court, to permit AUSA Chupp and his supervisor to address the Court personally, and to discuss further the USAO's plan going forward so the Court can have full confidence in its standards of practice and all AUSAs who appear before it. (Doc. 26 at 2-3). The Court does not find that "address[ing] the Court personally" will aid in resolution of this matter, and while the USAOs "plan going forward" is commendable, it is also the minimum that should be expected, and, in any event, is not relevant to whether Rule 11 has been violated here. The Court thus denies the request for a hearing.

from party motion pursuant to Rule 11(c)(2)—a heightened standard is applied. Under Rule 11(c)(3), sanctions "will ordinarily be issued only in situations that are akin to a contempt of court." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (quoting Fed. R. Civ. P. 11 adv. cmte. Notes, 1993 ed.).

There is scant Ninth Circuit caselaw describing what this "akin to contempt" standard contemplates in the context of *sua sponte* Rule 11(b)(3) sanctions. However, in the context of Bankruptcy Rule 9011(b)—which is nearly verbatim and functionally identical to Rule 11(b)[3]—the Ninth Circuit has spoken with some substance. *See In re Marsch*, 36 F.3d 825, 829-30 (9th Cir. 1994) (finding that "[b]ecause FRCP 11 and Bankruptcy Rule 9011 use virtually identical language, we often rely on cases interpreting the former when construing the latter," but noting that underlying policy differences may militate against treating the rules alike in certain circumstances). In examining the parallels between Civil Rule 11 and Bankruptcy Rule 9011, another court in this district has concluded that "what matters here is this: in the Ninth Circuit, the 'akin to a contempt' standard generally requires the court to find bad faith or conduct tantamount to bad faith." *Mavy v. Comm'r of Soc. Sec. Admin.*, CV 25-00689-PHX-KML (ASB) (D. Ariz. Jan. 13, 2026) (citing *Rocha v. Fiedler*, No 24-3692, 2025 WL 1219007, at *1 (9th Cir. Apr. 28, 2025) (cleaned up). The *Mavy* court further explained that "ignorance, negligence, or recklessness alone do[] not meet this standard, and must be combined with an additional factor such as frivolousness, harassment, or an improper purpose to be tantamount to bad faith." *Id.* A filing is frivolous if it "is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Although a court need not expressly find "bad faith" or "conduct tantamount to bad faith," without such an express finding the record must support the "conclusion that the sanctioned attorney acted in bad faith." *In re Lehtinen*, 564 F.3d 1052, 1061 & n.3 (9th

[3] *Compare* Fed. R. Civ. P. 11(b), (3), *with* Fed. R. Bankr. P. 9011(b), (3). Further, the 1997 amendment committee notes to Rule 9011 indicate that it is intended "to conform to the 1993 changes to Fed. R. Civ. P. 11," suggesting that the standards for each Rule are, at the very least, similar. *See also In re Nakhuda*, 544 B.R. 886 (B.A.P. 9th Cir. 2016) (Rule 9011 is "the bankruptcy counterpart to Civil Rule 11").

Cir. 2009).

### C. Discussion

#### 1. Legally or Factually Baseless

First, the Court must determine whether the filing at issue was "legally or factually baseless from an objective perspective." *Holgate*, 425 F.3d at 676. From the record here, the Court has little difficulty concluding that AUSA Chupp's accusation against Petitioner's counsel was factually baseless from an objective perspective. No evidence has been provided to support that Petitioner's counsel "represented to ICE that Petitioner was not presently removable due to his pending motion before the Board of Immigration Appeals." What evidence has been provided supports, at most, that Petitioner's counsel informed the "El Paso field office" that Petitioner had an appeal pending with the BIA, but made no representation as to Petitioner's removability. (Doc. 14-1 at 8). Objectively, there was no factual basis to assert that Petitioner's counsel had "represented to ICE that Petitioner was not presently removable."

Nevertheless, AUSA Chupp argues that through this accusation he "sought to preserve an argument based on an inference." (Doc. 26 at 8). Apparently based on nothing more than the word "advocated" in Petitioner's Declaration and the "incongruity" between the lawful authority to remove Petitioner and ICE's failure to do so (*see* Doc. 26 at 9), AUSA Chupp "inferred" that Petitioner's counsel was to blame, and asserts that this inference was "plausible and compliant with Rule 11." (Doc. 26 at 8). But Rule 11(b)(3) requires more than "plausibility"; it requires "evidentiary support," or that such support is "likely" after reasonable investigation.[4] AUSA Chupp does not argue, nor can he, that his accusation had "evidentiary support" at any time—least of all when it was made—or that, at the time he made it, it "likely" would have such support after reasonable investigation.[5]

---

[4] Nor is this inference grounded in reality. As the Court observed in its April 6, 2026 Order granting the Petition, "the suggestion that ICE officials would simply *take defense counsel's word* that Petitioner 'was not presently removable' would be, in the Court's experience, beyond credulity." (Doc. 17 at 9).

[5] Ironically, AUSA Chupp relied heavily on *Diouf v. Mukasey*, 542 F.3d 1222 (9th Cir. 2008), in his Supplemental Response. (Doc. 13 at 4-8). *Diouf* pointedly noted that "it is the burden of the government to document the conduct that extends the removal

None of the evidence cited by AUSA Chupp either supports his contention, or suggests that it would "likely" have evidentiary support upon reasonable investigation. As noted, AUSA Chupp cited three documents in support of his accusation: the Petition (Doc. 1), Petitioner's Declaration (Doc. 1-1), and DO Haro's Declaration (Doc. 13-1). (*See* Doc. 13 at 7, lines 17-24). The cited portion of the Petition, "¶ 27," states in full:

> On November 24, 2025, through new pro bono counsel, [Petitioner] filed a motion to accept an untimely appeal due to ineffectiveness of counsel and the IJ's legal errors. On December 19, 2025, the Board denied [Petitioner's] motion to accept a late-filed appeal. [Petitioner] timely filed a petition for review of that decision, which remains pending in the Tenth Circuit.

(Doc. 1 at 8 ¶ 27). Nothing in this passage supports AUSA Chupp's accusation, and, indeed, AUSA Chupp omits this citation reference in his Response to the Court's July 13 Order to Show Cause. (*See* Doc. 26).

The cited portion of Petitioner's Declaration, on which AUSA Chupp places great emphasis, states only that

> In December 2025, they tried to deport me again, but my attorney advocated for me and told them I had a motion to the Board of Immigration Appeals pending and they did not put me on a flight.

(Doc. 1-1 at 9 ¶ 59). Attorneys are required, and thus presumed, to act ethically. *Geders v. United States*, 425 U.S. 80, 90 & n.3 (1976); *see also United States v. Concord Mgmt. & Consulting LLC*, No. 18-cr-32-2 (DLF), 2019 WL 7758635, at *9 (D.D.C. July 1, 2019) ("[Justice Department attorneys] are presumed to act in good faith when exercising their authority, and the Court considers their statements as officers of the Court . . . ."). Nothing in this passage beyond AUSA Chupp's imagination rebuts that presumption. Without more, the word "advocated" supports only that Petitioner's counsel took "whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." AZ ER 1.3 cmt. 1. By its very terms, the requirement that a lawyer take "whatever ***lawful*** and ***ethical*** measures are required to vindicate a client's cause or endeavor" is mutually exclusive to making an "untrue," "intentionally obstructionist, bad faith" statement to government

---

period under § 1231(a)(1)(C). Given what is at stake for the [noncitizen], we believe it inappropriate to allow the Government to satisfy its burden on inferences alone." 542 F.3d at 1231.

officials in order to "frustrate the government's attempts to effectuate a removal." Objectively, the cited statement does not provide evidentiary support for AUSA Chupp's accusation, and any reasonable inference drawn from it is contrary to that posited by AUSA Chupp.

Finally, AUSA Chupp cited DO Haro's Declaration. The cited portions of that Declaration (¶¶ 20-22) state in full:

> November 4, 2025, [Petitioner] was placed for a removal flight for December 5, 2025. On the same day passport documents were sent to HQRIO.
>
> On December 2, 2025, BIA stated that they would proceed with adjudication of stay. On the same day BIA stated that they denied the stay.
>
> On December 6, 2025, [Petitioner] was still pending adjudication. On that same day [Petitioner] was removed from the removal flight that was set for December 11, 2025, [Petitioner] was then returned to El Paso AOR.

(Doc. 13-1 at 3 ¶¶ 20-22). At best, these passages describe an "incongruity"[6] that AUSA Chupp sought to color in with wishful thinking. But nothing in these passages make any reference to any representation by Petitioner's counsel, and thus objectively provide no support for AUSA Chupp's accusation.

This is not, as AUSA Chupp argues, an instance of "weak" evidence; it is an instance of *no* evidence. (Doc. 26 at 6). While AUSA Chupp may have desired to "preserve an argument based on an inference," that inference was wholly unreasonable, unsupported by the evidence, and antithetical to the ethical rules that guide attorney conduct.

That AUSA Chupp's subsequent "withdrawal" of the accusation would have been "curative" had Petitioner brought a Rule 11 Motion (rather than the Court *sua sponte*) does not excuse his Rule 11 obligations here. In his April 4, 2026 Sur-Response, AUSA Chupp "concede[d] that no obstruction took place in December" not because of any "new

---

[6] As AUSA Chupp puts it, "[i]t was undisputed that Respondents were legally permitted to remove Petitioner in December 2025, that they had a concrete plan to do so, and that Respondents pulled Petitioner off the flight on which they planned to remove him. The record contained no explicit explanation for this incongruity other than Petitioner's own statement that 'my attorney advocated for me and told them that I had a motion to the Board of Immigration Appeals pending and they did not put me on a flight.'" (Doc. 26 at 9).

information in the record now provided by Petitioner's counsel"—as he attempts to re-frame it in his Response to the Court's July 13, 2026 OSC (*see* Doc. 26 at 4)—but rather because he did "not have specific records of what Petitioner's attorney did or did not state." (Doc. 16 at 1). As such, this "concession" is also an admission that he had no evidentiary basis on which to base his accusation. Simply put, and for all the reasons discussed, AUSA Chupp's accusation was "factually baseless from an objective perspective." *Holgate*, 425 F.3d at 676.

**2. Reasonable and Competent Inquiry**

Second, the Court must determine if AUSA Chupp "conducted a reasonable and competent inquiry before signing and filing it." *Holgate*, 425 F.3d at 676. AUSA Chupp is largely silent as to the extent of any investigation, stating only that he "made inquiries after receiving the declaration filed at Doc. 13-1"—DO Haro's Declaration—"to locate any explanation beyond Petitioner's statement for why he was removed from the December flight and was unable to identify such an explanation." (Doc. 26 at 8).[7] AUSA Chupp further states that he "cannot access the Department of Homeland Security's online databases nor its physical files," and thus "had no further viable avenues to investigate the facts that he could have pursued before the Court's deadline." (*Id.*)

The "deadline" referred to appears to be the Court's March 30, 2026 Order directing that Respondents file a supplemental response by April 1, 2026. *See id.* ("the circumstances involve an order to respond to a claim for which Petitioner had provided no briefing within just two days."). While it is correct that the accusation at issue here was contained in the April 1, 2026 Supplemental Response filed in response to the Court's March 30, 2026 Order, this overly narrows the "reasonable investigation" window for purposes of Rule 11(b)(3). AUSA Chupp did not make his accusation off the cuff in the heat of a time crunch. Rather, he had toyed with the idea as early as Respondents' initial Response on March 24, 2026, some eight days earlier. (*See* Doc. 9 at 7) ("It is also unclear

---

[7] Notably, AUSA Chupp does not identify *when* exactly he *received* DO Haro's Declaration, though it must have been sometime between March 23, 2026 (when it was signed) and April 1, 2026 (when it was filed with the Court).

whether Petitioner's attorney's representations to ICE about his pending motion before the BIA constitute noncompliance with ICE's lawful removal efforts."). Contrasting the statement in the March 24 initial Response with the accusation in the April 1 Supplemental Response reflects a hardening of position, from "it is also ***unclear***…" to "it seems ***likely***…." *Cf.* Doc. 9 at 7 *with* Doc. 13 at 6. AUSA Chupp, however, identifies no investigation between March 24 and April 1 that would justify this evolution.

Further, AUSA Chupp's conclusion that he "had no further viable avenues to investigate the facts that he could have pursued" is belied by at least one obvious and readily apparent avenue: AUSA Chupp could have inquired with Petitioner's counsel as to the nature of any communication with ICE officials. That he did not even reach out to Petitioner's counsel undercuts any suggestion that whatever "investigation" he undertook was sufficient for Rule 11 purposes. In short, on this record, AUSA Chupp did not "conduct[] a reasonable and competent inquiry before signing and filing" his accusation. *Holgate*, 425 F.3d at 676.

**3. "Tantamount to Bad Faith"**

Finally, because this matter has been brought on the Court's own initiative, the Court must determine whether the above-described failures are "akin to contempt of court." *Barber*, 146 F.3d at 711. As noted, "the 'akin to a contempt' standard generally requires the court to find bad faith or conduct tantamount to bad faith." *Mavy*, CV 25-00689-PHX-KML (ASB) (D. Ariz. January 13, 2026). "[I]gnorance, negligence, or recklessness alone do[] not meet this standard, and must be combined with an additional factor such as frivolousness, harassment, or an improper purpose to be tantamount to bad faith." *Id.*

The Court has no difficulty concluding that AUSA Chupp's accusation was, at the very least, negligent and possibly reckless. On its own this would be insufficient to justify finding a violation of Rule 11 here. *Id.* However, the Court further finds that the accusation was also frivolous. A filing is frivolous if it "is both baseless and made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362. As discussed, the accusation had no evidentiary support, and AUSA Chupp has not identified any reasonable

and competent inquiry made before bringing it.

Nor was the accusation here some minor or tangential fact, but was instead presented as a dispositive fact justifying Respondents' continued detention of Petitioner and carrying with it the implication that Petitioner's counsel had engaged in potentially criminal behavior. *See* 18 U.S.C. § 1001. As such, it required Petitioner to expend the effort and resources—in less than 24 hours—to secure a signed Declaration from his former counsel, complete with evidentiary support, and briefing in response. Only then, after that effort had been made, did AUSA Chupp "withdraw" the argument, and even then, only because he "d[id] not have specific records of what Petitioner's attorney did or did not state." Given these stakes and, as he himself recognizes, the "special role of AUSAs" (Doc. 26 at 2), the Court concludes—especially in light of how the accusation hardened from "unclear" on March 24 to "likely" on April 1 without any supportive evidence or reasonable investigation in the interim—that the accusation was both negligent and frivolous, and thus "tantamount to bad faith," and, as such, in violation of Rule 11(b)(3).

**D. Sanctions**

Having concluded that AUSA Chupp's accusation was violative of Rule 11(b)(3) and "tantamount to bad faith," the Court finds that sanctions are warranted here. If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Appropriate sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

The Court finds that the sanctionable conduct at issue here is, broadly described, an insufficient appreciation for the special role of United States Attorneys and the need for evidentiary support for all factual contentions. Mindful of Rule 11(c)(4)'s strictures, the Court concludes that further legal education is a sufficiently limited sanction to deter repetition of such conduct. The Court will therefore order that AUSA Chupp participate in at least one (1) hour each of continuing legal education on a) the special role of United

States Attorneys and b) the need for evidentiary support for all factual contentions. This education shall be completed on or before June 30, 2027, and certificates of completion shall be filed with the Court.

**IT IS THEREFORE ORDERED:**

1) The Court finds that **Assistant United States Attorney Brooks Chupp** violated Rule 11(b)(3) for the reasons set forth herein.

2) No later than **June 30, 2027**, AUSA Chupp shall participate in at least one (1) hour each of continuing legal education on a) the special role of United States Attorneys and b) the need for evidentiary support for all factual contentions.

3) Certificates of Completion of the above shall be filed with the Court no later than **July 15, 2027**.

Dated this 8th day of October, 2026.

Honorable Diane J. Humetewa
United States District Judge